**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| DARRELL LEON MCCLANAHAN, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:25-cv-03399-DGK |
| | ) | |
| MISSOURI SECRETARY OF STATE | ) | |
| DENNY HOSKINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

This is a § 1983 civil rights action. Pro se Plaintiff Darrell Leon McClanahan, III, alleges violations of his First and Fourteenth Amendment rights, and also of Article I, Section 2, Clause 2 (the "Qualifications Clause") of the United States Constitution, arising from his desire to file as a Republican candidate for United States Representative for Missouri's 4th Congressional District in the August 2026 Republican primary. Plaintiff brings claims against Defendants Missouri Secretary of State Denny Hoskins ("Secretary Hoskins"), the Missouri Republican State Committee ("the MRSC"), and MRSC Chairman Peter Kinder ("Kinder"). Plaintiff claims Defendants will inevitably violate (1) his right to seek office, (2) his right to freedom of association, (3) his right to due process, (4) his right to equal protection, and (5) the United States Constitution's Qualifications Clause, because the MRSC threatens to refuse to give Plaintiff a receipt for paying his candidate filing fee, and so Secretary Hoskins will refuse to put Plaintiff on the Republican primary ballot for Missouri's 4th Congressional District.

Now before the Court are Defendant Secretary Hoskins' motion to dismiss all claims, ECF No. 7, and Defendants MRSC and Kinder's motion to dismiss all claims, ECF No. 15. For the reasons stated below, the motions are GRANTED.

**Legal Standard**

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing the pleader is entitled to relief." A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, a court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to" the plaintiff. *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.* Rule 8 "does not require detailed factual allegations" to show facial plausibility, "but it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* "Asking for plausible grounds to infer [a defendant's liable conduct] . . . simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" thereof. *Twombly*, 550 U.S. at 556.

In reviewing the complaint, a court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). A court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

2

Finally, the Court is mindful that a pro se complaint must be liberally construed, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and "pro se litigants are held to a lesser pleading standard than other parties," *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). "However, this standard does not excuse pro se complaints from alleging sufficient facts to support the claims advanced." *Gerstner v. Sebig, LLC*, 386 Fed. App'x 573, 575 (8th Cir. 2010) (modified, citation omitted).

### Background

Plaintiff is an active member of the Republican Party who has served as a delegate at the Missouri Republican State Convention and has run for Missouri-state and national office on multiple occasions. He is an eligible candidate for Missouri's 4th Congressional District seat in the U.S. House of Representatives and intends to file as a candidate for that seat.

Mo. Rev. Stat. § 115.357 requires potential candidates for the U.S. House of Representatives to pay a $300 filing fee to the treasurer of the party for which the potential candidate intends to run. Plaintiff intends to pay this fee to the MRSC Treasurer for the August 2026 primary election.

Secretary Hoskins is responsible for the ministerial task of ballot certification under Mo. Rev. Stat. §§ 115.357 and 115.387. Section 115.387 requires "the secretary of state to transmit to each election authority a certified list containing the name and address of each person who has filed a declaration of candidacy in the secretary's office and is entitled to be voted for at the primary election . . . ."

After paying the filing fee to the MRSC, Plaintiff must present a receipt showing payment of the fee to Secretary Hoskins. Without the receipt, Secretary Hoskins cannot put Plaintiff's name on the primary ballot as a Republican nominee. Alternatively, Plaintiff could

file as an independent candidate with no filing fee, § 115.357.4, provided he meets minimum petition-signature requirements, §§115.321.4, 115.327.

The MRSC only accepts filing fees from—and thus only issues receipts to—potential candidates who show sufficient adherence to the party's ideological standards. To gauge this adherence, the MRSC gives potential candidates a "Values Survey" detailing a potential candidate's policy positions; requires signing a Republican Candidate Statement, which affirms alignment with the Republican party platform; uses third-party political scorecards; and does criminal background and ethics checks. Potential candidates who fail this battery of tests receive a rejection letter and are thus prevented from being placed on the Republican primary ballot.

Plaintiff challenges the constitutionality of § 115.357.2 as applied to him. In particular, he alleges violation of the right to seek office and of freedom of association under the First and Fourteenth Amendments (Count I), violation of due process (Count II) and equal protection (Count III) under the Fourteenth Amendment, and violation of the Qualifications Clause, U.S. Const. art. I, § 2, cl. 2 (Count IV), against Defendants. Plaintiff seeks (1) a declaration that Mo. Rev. Stat. § 115.357.2 as applied violates the First and Fourteenth Amendment rights of Plaintiff and voters and the Qualifications and Supremacy Clauses of the U.S. Constitution; (2) permanent injunctions (a) compelling the MRSC to accept Plaintiff's filing fee and issue him a receipt, (b) compelling Secretary Hoskins to accept his candidacy upon receiving Plaintiff's filing fee receipt, and (c) enjoining Defendants from enforcing ideological vetting requirements and criminal history in accepting candidates for office; and (3) attorneys' fees and costs. Secretary Hoskins moves to dismiss for insufficient service of process, sovereign immunity, lack of ripeness, lack of standing, and failure to state a claim. The MRSC and Kinder move to dismiss for insufficient service of process and failure to state a claim.

4

**Discussion**

The Court first addresses the grounds for dismissal unique to Secretary Hoskins' motion. The Court then turns to the ground for dismissal—failure to state a claim—common to all Defendants.[1]

### I. Plaintiff has standing and the case is ripe.

Secretary Hoskins argues Plaintiff lacks standing and that his claim is not ripe. Plaintiff disagrees.

#### a. Standing

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, "[a] party invoking federal jurisdiction must show a right to assert a claim in federal court by showing injury in fact, causation, and redressability." *Missouri Roundtable for Life v. Carnahan*, 676 F.3d 665, 672 (8th Cir. 2012). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or

---

[1] All Defendants also move to dismiss under Fed. R. Civ. P. 12(b)5 for insufficient service of process. Plaintiff appears to concede insufficient service of process but argues that cure of defective service rather than dismissal is the proper remedy. ECF No. 8 at 1–2, ECF No. 17 at 1. Indeed, Plaintiff alleges he attempted to serve Defendants again on February 24, 2026. ECF 11 at 1–2. While insufficient service of process may be grounds for dismissal, it does not compel dismissal, especially when a plaintiff can cure improper service. *Froland v. Yamaha Motor Co.*, 296 F. Supp. 2d 1004, 1006– 07 (D. Minn. 2003) (citations omitted). Ordinarily, "when service is improper, it is within the district court's discretion to either (1) dismiss the suit, or (2) retain the suit, quash service, and allow the plaintiff to re-serve the defendant." *United States ex rel. Murrill v. Midwest CES, LLC*, No. 4:21-CV-00371-DGK, 2023 WL 2815863, at *3 (W.D. Mo. Apr. 6, 2023) (citing *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 886 (8th Cir. 1996). However, because the Court finds that Secretary Hoskins is immune to suit and that Plaintiff has failed to state a claim under Rule 12(b)(6), the Court, in the interest of judicial economy, will not require Plaintiff to properly serve Defendants. *See Lamb v. Bank of Am., N.A.*, No. 4:11-CV-819 CAS, 2012 WL 87146, at *2 (E.D. Mo. Jan. 11, 2012) (for the purposes of a motion to dismiss, "consider[ing] defendants' arguments regarding proper service waived because defendants also move to dismiss plaintiffs' claims on their merits").

5

redress the injury." *Bernbeck v. Gale*, 829 F.3d 643, 646 (8th Cir. 2016) (citation omitted). The elements of standing must be established "with the manner and degree of evidence required at the successive stages of the litigation." *Bernbeck*, 829 F.3d at 646 (citation omitted). Thus, "in response to a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007) (citations omitted). "[E]ven attenuated injuries are sufficient to confer Article III standing at the motion-to-dismiss stage." *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1161 (D. Minn. 2014) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Secretary Hoskins argues Plaintiff lacks standing because, at the time he filed the Complaint, he had not yet been denied a place on the Republican primary ballot and so has not satisfied the injury-in-fact requirement.[2] Alternatively, Secretary Hoskins argues Plaintiff could run as an independent if he is denied a place on the Republican primary ballot and that Plaintiff's Complaint provides no plausible claim for relief because he provides no legal authority that shows he has a right to be a candidate of the party of his choice. In response, Plaintiff invokes his concrete and particularized interest in the rules that govern the election in which he seeks to run, *see Bost v. Illinois State Bd. of Elections*, 146 S.Ct. 513, 522–23 (2026), and his right to bring a pre-enforcement challenge, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).

---

[2] The Court does not consider the alleged denial of Plaintiff's filing fee on February 24, 2026, when considering standing, because standing is determined at the time the complaint was filed, which was December 23, 2025. *See Inst. for Free Speech v. Ravnsborg*, 416 F. Supp. 3d 894, 903 (D.S.D. 2019) (citing 13A Charles Alan Wright et al., Federal Practice and Procedure § 3531 (3d ed. Updated August 2019) ("Post-filing events that supply standing that did not exist on filing may be disregarded, denying standing despite a showing of sufficient present injury caused by the challenged acts and capable of judicial redress.")).

Secretary Hoskins replies Plaintiff's reliance on these cases is misplaced because they are factually distinguishable.

The Court finds Plaintiff has satisfied the relatively low standard for establishing standing at the motion-to-dismiss stage. "[A] potential candidate for public office has a legally protected interest in becoming a candidate for public office sufficient to satisfy Article III," *Gralike v. Cook*, 996 F. Supp. 889, 895 (W.D. Mo. 1998) (citing *Clements v. Fashing*, 457 U.S. 957, 961–62 (1982)). Plaintiff has plausibly pled the imminence of his alleged injury (even if it is "attenuated") with specificity, has tied that alleged injury to Secretary Hoskins through Mo. Rev. Stat. § 115.357.2, and has plausibly alleged that an injunction would redress his injury.

### b. Ripeness

Article III also limits federal jurisdiction to claims that are ripe, that is, "fit[] . . . for judicial decision." *United States v. Gates*, 915 F.3d 561, 563 (8th Cir. 2019). "Claims are not ripe when they rest on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Inst. for Free Speech v. Ravnsborg*, 416 F. Supp. 3d 894, 902 (D.S.D. 2019) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "Ripeness often overlaps with the injury-in-fact requirement of standing, particularly when plaintiffs challenge a statute that has yet to be enforced against them." *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014)).

Secretary Hoskins' ripeness argument is essentially the same as his standing argument, that at the time Plaintiff filed the Complaint, he had not yet been denied a place on the Republican primary ballot and so has not been injured. While "standing and ripeness are technically different doctrines, they are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention." *Johnson v. Missouri*, 142

F.3d 1087, 1090 n.4 (8th Cir. 1998). Accordingly, the Court also finds the case is ripe, even though, at the time Plaintiff filed the Complaint, he had not yet been denied a place on the Republican primary ballot. The specificity with which Plaintiff pled his imminent injury in the election context and the nature of the relief sought make the case fit for judicial decision.

## II. The case is not moot.

In response to an alleged attempt to file for the Republican primary on February 24, 2026, where the MRSC allegedly refused to accept his filing fee, Plaintiff filed a motion for a temporary restraining order in which he sought, in general terms, to avoid missing the March 31, 2026, filing deadline due to the pendency of this litigation. He sought, among other things, a court order enjoining the enforcement of § 115.357.2's receipt requirement against Plaintiff or ordering the MRSC to accept Plaintiff's filing fee and issue a receipt. ECF No. 10. The Court found Plaintiff failed to meet the demanding standard for a TRO—especially the irreparable-harm and success-on-the-merits factors—and denied the motion. ECF No. 19.

The March 31, 2026, filing deadline has now passed, and though no Defendant raises the issue of mootness, because mootness is jurisdictional, the Court must consider whether this case is now moot. *See Perficient, Inc. v. Munley*, 973 F.3d 914, 916 (8th Cir. 2020) ("We must consider the jurisdictional issue of mootness sua sponte."). As the Eighth Circuit has observed, "[f]ederal courts are not empowered to give opinions upon moot questions . . . . A narrow exception to the mootness doctrine exists when a dispute is capable of repetition yet evades review. A dispute is capable of repetition yet evades review when the challenged action is too short in duration for timely review and a reasonable expectation exists that the complaining party will be subject to the same action again." *Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004) (citation and quotation marks omitted).

The Court finds this case is not moot due to the continued effect of Missouri's filing-fee statute. Because of the repetitive nature of election cycles and the various deadlines that govern them, which often, as here, do not align neatly with the timeframes of litigation, Plaintiff's alleged injuries are "capable of repetition yet evading review." Indeed, "[e]lection issues are among those most frequently saved from mootness by this exception." *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 795 (8th Cir. 2016).

### III.   Secretary Hoskins is immune to suit under sovereign immunity.

Secretary Hoskins argues he is immune from suit due to sovereign immunity because his role in registering candidates for elected office is only administrative or ministerial in ascertaining whether a potential candidate has met the filing requirements of Mo. Rev. Stat. § 115.357.2. Plaintiff counters that Secretary Hoskins enforces the Republican Party's "purity test," which sets "unconstitutional additional qualifications" for federal office, through Mo. Rev. Stat. §§ 115.357 and 115.387.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Minnesota RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985, 989 (8th Cir. 2022) (citation omitted). Under *Ex parte Young*, however, "certain private parties [can] . . . seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). That means that, "at the motion to dismiss stage," "sovereign immunity does not bar . . . suit against" "an . . . official who may or must take enforcement actions against [parties] if they violate the terms of [the challenged state law]." *Id*. at 45–46. However, "[t]he *Ex parte Young* exception only applies against officials who threaten and are about to commence proceedings, either of a

9

civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution." *Minnesota RFL Republican Farmer Lab. Caucus*, 33 F.4th at 990.

But state officials who implement state statutes "in an administrative or ministerial sense and . . . not [in a way] analogous to enforcing the statute[s] . . . through a civil or criminal prosecution" are not proper *Ex parte Young* defendants. *Balogh v. Lombardi*, 816 F.3d 536, 546 (8th Cir. 2016); *see also Bio Gen LLC v. Sanders*, 142 F.4th 591, 605–06 (8th Cir. 2025) (holding that Arkansas Attorney General was not a proper *Ex parte Young* defendant because his statutory role of certifying to the legislature that certain provisions of a state law were being enjoined so that other parts of the law would become effective was "a ministerial task relating to the implementation of [the law]—not an act enforcing the law against noncompliant persons"). When *Ex parte Young* does not apply, and a suit against a State official is therefore barred by sovereign immunity, "that suit . . . must be dismissed for a lack of jurisdiction." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 76 (1996).

Under Missouri law, "[t]he vast majority of the duties assumed by the Secretary of State are ministerial. . . . This is especially true with regard to election related duties." *Vowell v. Kander*, 451 S.W.3d 267, 274 (Mo. Ct. App. 2014) (citing *In re Impeachment of Moriarty*, 902 S.W.2d. 273, 277 (Mo. 1994) (internal quotation marks omitted)). "In fact, the Missouri Supreme Court has intimated that the Secretary of State's duty to certify a name for a ballot is 'purely ministerial.'" *Id.* As such, Mo. Rev. Stat. § 115.387, which requires the Secretary of State to "transmit to each election authority a certified list . . . of each person who has filed a declaration of candidacy in the secretary's office and is entitled to be voted for at the primary election," "simply requires [the Secretary of State] to certify that filers have timely filed their

10

declaration of candidacy with all the information required. In other words, it is a certification that the declarant's paper work is in proper order and was timely filed." *Id.* at 275.

Secretary Hoskins' role in administering Missouri's elections for federal office is ministerial, as the Complaint itself alleges. *See* ECF No. 1 at ¶ ("Defendant Hoskins is responsible for the ministerial tasks of ballot certification under Mo. Rev. Stat. §§ 115.357 and 115.387."). His ministerial duty of receiving confirmation of filing fees and then sending a list of names to election authorities is not a "threat[]" that Secretary Hoskins is "about to commence proceedings, either of a civil or criminal nature to enforce against" Plaintiff the challenged candidate certification provisions. *Minnesota RFL Republican Farmer Lab. Caucus*, 33 F.4th at 990. Secretary Hoskins' ministerial implementation of §§ 115.357.2 and 115.387 is not "analogous to enforcing the statute[s] . . . through a civil or criminal prosecution." *Balogh*, 816 F.3d at 546. Therefore, Secretary Hoskins is not a proper *Ex parte Young* defendant in this case and is immune from suit under sovereign immunity. *Id.* Accordingly, the case against him must be dismissed. *Seminole Tribe of Fla.*, 517 U.S. at 76.

### IV. Plaintiff fails to state a claim under § 1983.

"To establish a § 1983 claim, [Plaintiff] must . . . show that [he] ha[s] been deprived of a constitutional right by a person acting under color of state law." *Sabri v. Whittier All.*, 833 F.3d 995, 999–1000 (8th Cir. 2016) (cleaned up). All Defendants argue Plaintiff fails to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). Secretary Hoskins argues Plaintiff provides "[n]o . . . legal authority [that] impairs the operation of parties to set requirements, standards, or to choose who will be its candidates," and therefore there is no "legal basis that is plausible" to support his claim. ECF No. 7 at 10. The MRSC and Kinder argue "Plaintiff provides no legal authority . . . that he has a right to be a candidate for the party of his own

choosing apart from the party's decision, standards, and requirements." ECF No. 15 at 6–7. Conversely, they argue "[t]he MRSC has a First Amendment right to freedom of association and can choose with whom it wishes to associate or not associate." *Id.* at 7. Plaintiff responds that Defendants are impermissibly adding qualifications for federal office through the MRSC's candidate vetting process. ECF No. 17 at 4–6.

"Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). Even so, Plaintiff must plausibly allege he has a constitutional right of which he has been—or is about to be—deprived. In this case, the Court "must . . . determine if the factual allegations pleaded in [Plaintiff's] complaint are sufficient to invoke a constitutional claim against [D]efendants," *Wells v. Walker*, 852 F.2d 368, 371 (8th Cir. 1988), for administration of § 115.357.2 (Secretary Hoskins) and the Republican Party's vetting process (MRSC and Kinder).

Plaintiff fails to state a claim for multiple reasons. Plaintiff's factual allegations fail to invoke a constitutional claim to appear on the Republican primary ballot under either the First or Fourteenth Amendment. They fail to show the MRSC's internal candidate-vetting procedures are state action. And they fail to show that MRSC's vetting procedures add qualifications for office within the meaning of U.S. Const. Art. I, § 2, cl. 2.

    **a. Plaintiff's factual allegations fail to invoke a constitutional claim to appear on the Republican primary ballot.**

In "constitutional challenges to specific provisions of a State's election laws . . . a court . . . must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify

and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 213–14 (1986) (citations omitted).

Plaintiff's argument founders at the very outset. At bottom, Plaintiff argues that his right to appear on the Republican ballot in the Republican primary for Missouri's 4th Congressional District depends exclusively on his satisfaction of the age, citizenship, and inhabitancy qualifications of U.S. Const. art. I, § 2, cl. 2. In other words, if Defendants refuse to place Plaintiff on the Republican primary ballot for any reason other than the constitutional qualifications, they violate his First and Fourteenth Amendment rights and the Qualifications Clause. And insofar as Mo. Rev. Stat. § 115.357.2 allows them to do so, the statute is unconstitutional. But Plaintiff's claim fails because he does not have a constitutional right to appear on the Republican Party primary ballot.

Plaintiff's claim rests on his contention that the Republican primary in Missouri's 4th Congressional District is "the dispositive election" for the seat because the District is "overwhelmingly Republican." ECF No. 1 at ¶¶ 29, 30. But this is irrelevant to any right Plaintiff might assert. An "individual" does not have a "constitutional right to have a 'fair shot' at winning the party's nomination," *Lopez Torres*, 552 U.S. at 205, or even to be a candidate for a specific party at all, *see Duke v. Massey*, 87 F.3d 1226, 1234 (11th Cir. 1996) ("Undeniably, [David] Duke has a First Amendment right to express his political beliefs free from state discrimination no matter how repugnant his beliefs may be to others. It is equally clear, however, that he does not have a First Amendment right to express his beliefs as a presidential candidate for the Republican Party." (citations omitted)). While "the First Amendment [provides a] right to run for office," *McKune v. Lile*, 536 U.S. 24, 50 (2002) (O'Connor, J., concurring),

Plaintiff does not have a constitutional right to run for office as a Republican in the Republican primary without satisfying the Republican Party's internal procedures for nominee selection. Further, it is well established that political parties' First Amendment right to association protects their internal procedures for choosing nominees for office.

> [T]he First Amendment protects the freedom to join together in furtherance of common political beliefs, which necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only. That is to say, a corollary of the right to associate is the right not to associate. Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being. In no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views.

*California Democratic Party v. Jones*, 530 U.S. 567, 574–75 (2000) (citations and quotation marks omitted); *see also Democratic Party of U. S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 126 (1981) (holding Wisconsin could not enforce a statute forcing the Democratic Party to seat delegates at its National Convention contrary to the party's own rules); *Tashjian*, 479 U.S. at 224 (A party's "determination . . . of the structure which best allows it to pursue its political goals, is protected by the Constitution."); *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223, 233 (1989) (holding California prohibition against party-endorsement of primary candidates violates parties' right of association, because it "prevents party governing bodies from stating whether a candidate adheres to the tenets of the party").

> **b. Even if Plaintiff had a right to be on the Republican primary ballot, Plaintiff's factual allegations fail to show the MRSC's internal candidate-vetting procedures are state action.**

"Section 1983 provides a cause of action against '[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State*' deprives someone of a federal

constitutional or statutory right. As its text makes clear, this provision protects against acts attributable to a State, not those of a private person." *Lindke v. Freed*, 601 U.S. 187, 194 (2024) (quoting 42 U.S.C. § 1983, emphasis added in the original). In § 1983 cases, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "An act is not attributable to a State unless it is traceable to the State's power or authority. Private action—no matter how 'official' it looks—lacks the necessary lineage." *Lindke*, 601 U.S. at 198. To be attributable to the State, (1) "the deprivation must be caused by the exercise of some right or privilege created by the State"; and (2) the person depriving another of a right "must be a person who may fairly be said to be a state actor," due, for example, to concerted action with or aid from the State. *Lugar*, 457 U.S. at 937. "By contrast, when the challenged conduct entails functions and obligations in no way dependent on state authority, state action does not exist." *Lindke*, 601 U.S. at 198–99.

Plaintiff argues Secretary Hoskins' enforcement of Mo. Rev. Stat. § 115.357.2 transforms the MRSC's vetting process for certifying candidates into state action so that it is actionable under § 1983. Citing *Terry v. Adams*, 345 U.S. 461 (1953), which declared the Jaybird Democratic Association's exclusion of black voters from its state-permitted "duplicat[e]" primaries on account of their race, to be a violation of the Fifteenth Amendment, *id.* at 469, Plaintiff argues the MRSC's control over ballot access in the Republican primary election constitutes "state action." *See* ECF No. 1 ¶¶ 127, 128.

Plaintiff's argument fails. As the Supreme Court has clarified, *Adams* "held only that, when a State prescribes an election process that . . . 'enforces' . . . [racial] discrimination[,] . . . the parties' discriminatory action becomes state action under the Fifteenth Amendment. [*Adams* does] not stand for the proposition that party affairs are public affairs, free of First Amendment

protections." *California Democratic Party*, 530 U.S. at 573. That is, when states allow political parties to use the State election process to deny the right to vote to a class of people on account of color or race, this allowance becomes state action and violates the Fifteenth Amendment. Plaintiff's claim is entirely different.

Moreover, Plaintiff does not allege that the MRSC vets candidates pursuant to "some right or privilege created by the State or by a rule of conduct imposed by the State," *Lugar*, 457 U.S. at 937. Neither does he allege that the MRSC "has acted together with or has obtained significant aid from state officials," *id.*, in conducting its vetting process. On the contrary, the MRSC's internal processes for determining which candidates will run for the Party's nomination are "in no way dependent on state authority." *Lindke*, 601 U.S. at 198–99. As such, "state action does not exist," *id.* at 199, and Plaintiff fails to state a claim under § 1983.

Even construing the MRSC's vetting activity as operating in virtue of the § 115.357.2 filing-fee statute, the statute itself cannot be invalidated on that basis. Cases invalidating ballot-access requirements "have focused on the requirements themselves, and not on the manner in which political actors function under those requirements." *Lopez Torres*, 552 U.S. at 205. Plaintiff only seeks relief with respect to § 115.357.2 in relation to the manner in which the MRSC functions under its requirements. Plaintiff has not pled facts sufficient to establish that the MRSC's actions in relation to § 115.367.2 can be fairly attributed to Missouri. Because the MRSC's "pursuit of its political goals," *Tashjian* 479 U.S. at 224, through vetting the views of its candidates cannot be attributed to the State of Missouri, there is no basis for granting him relief under § 1983.

### c. The MRSC's vetting procedures are not additional qualifications for office within the meaning of Art. I, § 2, cl. 2.

The Constitution sets exclusive age, citizenship, and habitation requirements for holding office in the House of Representatives. U.S. Const. art I, § 2, cl. 2; *see U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 783 (1995). This does not mean, however, that states cannot regulate ballot access in ways that fall short of either directly or indirectly adding qualifications for holding office. *See, e.g.*, *Storer v. Brown*, 415 U.S. 727 (1974) (upholding, over a Qualifications Clause challenge, a one-year party "disaffiliation requirement" for potential independent candidates to appear on the ballot); *Jenness v. Fortson*, 403 U.S. 431 (1971) (upholding a 5% petition-signature requirement for candidates to appear on the ballot); *Munro v. Socialist Workers Party*, 479 U.S. 189 (1986) (upholding 1% signature requirement).

Plaintiff does not challenge the Missouri statute requiring a filing fee, he challenges the MRSC's vetting process to assure nominees on the primary ballot espouse the political positions the MRSC prefers. This is, indeed, "viewpoint discrimination," as Plaintiff alleges, ECF No. 1 at ¶ 6, but it is permissible. Indeed, it is the nature of party politics. *See, e.g.*, *LaRouche v. Fowler*, 152 F.3d 974, 995 (D.C. Cir. 1998) ("[I]t is the *sine qua non* of a political party that it represent a particular political viewpoint. And it is the purpose of a party convention to decide on that viewpoint, in part by deciding which candidate will bear its standard.").

Because the MRSC's "pursuit of its political goals," *Tashjian* 479 U.S. at 224, through vetting the views of its candidates does not add qualifications for office within the meaning of Art. I, § 2, Plaintiff has failed to state a plausible claim that the MRSC's vetting procedure violates the Qualifications Clause.

For all of these reasons, Plaintiff fails to state a claim under § 1983.

**Conclusion**

For the reasons discussed above, Defendants' motions are GRANTED, and all claims are

DISMISSED.

**IT IS SO ORDERED.**

Date:  May 27, 2026                                   /s/ Greg Kays
                                                      GREG KAYS, JUDGE
                                                      UNITED STATES DISTRICT COURT